Good morning. Good morning, Your Honor. May it please the Court, Aaron Goldsmith on behalf of the government, I'd like to reserve four minutes for rebuttal. I'll try to help you, but keep your eye on the clock, okay? Yes, Your Honor. We are here because a single district court judge has entered a nationwide injunction that fundamentally restructures how an agency allocates its resources. Now, let me just ask you this, just as a procedural matter. My recollection is that you didn't raise the issue of the adequacy or appropriateness of a nationwide injunction until the time of your reply brief. Do I understand correctly? Well, we recognize that this is a nationwide class that has been certified. So we just are saying, as just a factual matter, this is a nationwide. Okay, so you're just saying within the context of the class? Correct. Okay, very well. Correct. So you're not challenging the class certification order? We are not. We objected to it at the district court level. We lost, that was in the July 2017 order, and we are not raising that on appeal. And I would just note that USCI is somewhat different from other agencies in that it does not receive appropriate funds from Congress, rather it relies on filing fees, and there is no filing fee for an application for asylum or employment authorization. So what this means as a result of this injunction is that they're taking, or having to use filing fees for other petitioners, applicants, and allocate those resources to adjudicating these applications for employment authorization. I can appreciate that you're concerned, but are you aware of any case law that suggests that if arguendo, the agency has violated the law, that the fact that it is relying on filing fees and may have to restructure its priorities is a basis for not complying with the rule? No, Your Honor, but the question remains whether or not, based on the text of the regulation, was it the agency's, does it reflect an agency's intent to create a mandatory binding? And I won't get to that in a minute, but as I understand it, the agency is in the process of promulgating a rule which would change the 30-day rule. Is that correct? Correct, Your Honor. So you're going to correct this problem, however we rule on what we currently have with respect to this class is one thing, but you're going to correct that allocation problem by an amendment of the rule, assuming it's done properly, is that correct? Yes, there's notice and comment rulemaking ongoing, comment period ended in November. I can't predict what's going to happen moving forward, but that's where things stand. Do you have any sense of the timing on that new rule? I'm sorry, Your Honor, I don't know. It's not like this is imminent, that something's going to happen within the next few weeks or something of that nature, but I can't speak more to that issue. But for our purposes, isn't it fair to say that we need to make our decision based upon our construction of 706-1 and related issues without regard to whether it's a burden on the agency and whether it has adequate funding or whether it's required to change its priorities, right? Well, you do have to make your ruling based on the existing regulation and statutes. I concede that point, but I'm saying that you should, courts should be hesitant to find, to interpret a regulation as creating this sort of binding and forceful right under these sorts of contexts, and there are some concerns if an agency in one administration can, different administrations have different priorities, different emphasis that they will put. There are some issues if an agency can bind itself in this manner, in this, based on... And that, of course, is an issue we get in the Ninth Circuit frequently, but you're familiar with the Vietnam veterans of America versus CIA, right? Yes, Your Honor. Doesn't that have a strong applicability to the issues in this case? Well, we would say, one, we would point to just the fact that, you know, if you, when looking at this regulatory provision, you look at it, you read the entire paragraph, subsection A1, and that if you just look at those words in the full context, it doesn't import an intent for the agency to bind itself in that manner. I think that's exactly what it said. Go ahead. I probably was going to ask the same question, but I think you have to acknowledge that the agency could pass a regulation that was then binding upon itself, right? The only question is, did it do so here? That's the first question. Yes, Your Honor. I guess I'm having trouble understanding, if we assume for a moment that the regulation is mandatory, and I know you disagree with that, but let's just assume it. I'm having difficulty understanding what your concern is with the injunction, because as to scope, you acknowledge that the class was certified, and so it's sort of hard to imagine what the scope would be other than a nationwide injunction. There could be questions about how quickly you need to comply with that, but I don't really hear you in your brief saying that the district court was unreasonable in that. And then there could be questions about your compliance rate. In other words, are you expected to hit 100% or is it really more reasonable? And by all accounts, I think everyone agrees the government has done a very good job in trying to comply with this. So at this point, I don't really understand what the issue is. So there's, assuming the caveat that you said at the beginning of your question to me, there is this question of whether or not the district court had discretion or whether it was required to automatically enter an injunction. That is, did it, was it required to weigh the equities, engage in a balancing approach? And that has implications not just for this case, but for other cases moving forward. Well, but you don't suggest, I mean, if the regulation says 30 days and we assume for a moment that it's mandatory, how could the district court enter an injunction that said 60 days? I mean, you would just be rewriting the regulation at that point. There would be questions about the scope, does it apply to a class or not? How fast do you have to do it? Should you be penalized if you can't meet 100%? But when you look at what the district court did after the order here, and there was, there were a couple other, there's status reports, there was a second order in which he basically said, look, I'm not going to penalize you for being at 99% or whatever percentile you're at. So at that point, I'm still not clear what the issue, what you'd like us to do. So you make some good points in terms of the things that happened afterwards and those, that's true, but there still is this issue of whether or not the court was required to balance the equities, engage in a balancing test. I understand. But what kind of balancing test? Are we talking about track? Yes. Is that what you're suggesting? Yes. Particularly track. The fourth factor. But how does the track case fit into this context? Well, those, those are the factors that. I know what the factors are. I just want to know, why does track apply in this case? It applies unless Congress says otherwise, and here Congress hasn't said otherwise. So what is the injunction that you want? What's the relief that you think, if you balance the equities, what should, what should the injunction look like? Well, obviously we're, we're, we, we disagree that the injunction should be entered against us. That, that is, that was our position. Even if it's mandatory? Even if we agree the 30 days is mandatory? That's correct. Because of the importance of factor four and the weighing of the, of the different factors that I. Factor four under the winter test? Is that what you're talking about? I'm sorry, under the, the track factors. Okay. In terms of the competing factors that, that, yes, the district court, that, that first the district court said, I don't have discretion, and then second, alternative, if I had discretion, look at factor three. This goes to welfare, health, and, and that's of such importance that outweighs every, every other concern. But that's not quite what the fourth factor says. It says that you have to look at the competing interests. There are a lot of other activities that USCIS engages in that have bearing on health, welfare potentially. There are other groups of individuals who have applications, petitions, including applications for employment authorization. And there is an issue with prioritizing this one class above other groups. And put. What's your, what's your best authority in case law to back this up? As I look at Vietnam veterans, I look at the Tenth Circuit case, I look at the Fourth Circuit case. I'm not finding the track requirements in there when you have a mandatory injunction arguendo. So, I, I think if you look at the, kind of the landmark case of the TVA versus Hill case, which is, I, I acknowledge it's not directly on point, but, but it, it involves, it talks about the role of Congress in setting priorities and says, okay, as a general rule, courts engage in this engaging in, in this balancing test, unless Congress has spoken otherwise. And it found in the case of the Endangered Species Act, and this is involved in the snail darter, that, that Congress had spoken in the clearest terms possible, therefore there was nothing to balance, then an injunction enters automatically. And that's been applied by this court, Bagley, Biodiversity versus Bagley was, was one of the key cases. Well, with respect, counsel, here you've got 706-1, argue, it says shall, the plaintiffs indicate that there's a 30-day rule. You acknowledge it's there, you just don't think it's mandatory. But if it is mandatory, arguendo, what's to balance? Well, the, the, the competing priorities. But again, it says, my colleague said, what are you going to do, rewrite it, say, you know, 30 days is awfully short. Let's make it 150. They can't do that, can they? Well, I mean, arguably that would be an abuse of discretion, but. Right. So. Could they, could they say that you're going to increase the filing fees? No, Your Honor. They can't do any of that, can they? They've got to follow the rule. But, but if you look at other cases, independent owners, contractors case, that Ninth Circuit case, where there, even though there was, there was at least arguably a violation of the statute, the, the court still declined to enter an injunction. Now, I know that's a different context than this case, but there is this principle that until Congress says otherwise, the, the, the courts are supposed to engage in the balance. I guess that the. If, if I could, I'd like to go a different direction. Yes, Your Honor. Because we're all talking about 706, but when I was reading through this, first of all, it seems to me the only way we're ever going to get to this analysis under the EPA is the fact that there's a statute dead on point that says nothing in this subsection will be construed that can create any substantive or procedural right or benefit that is legally enforceable by any party against the U.S. or its agencies. So we get to that statute. Right. And then we say, okay, can you get there through the APA? And I guess what I'm trying to figure out, if I get to 706, don't I have to look at 702 before I get to 706? Yes. Yes, Your Honor. And if I'm in 702, it seems to me the plaintiffs need to show that they've suffered a legal wrong or they were adversely affected or aggrieved by the agency action. Would you agree? Correct, Your Honor. Okay. So what class does this group fall under? It doesn't seem to me that they've suffered any legal wrong. The statute itself says that they don't have any right to employment, so I'm having a tough time how they have a legal wrong. Are they adversely affected or aggrieved? So, I mean, you're correct that a good starting point is to look at the statute and what Congress intended. Right. And that's something that needs to be considered by this Court and in terms of reading what's the requirement, what is the wrong that is trying to be addressed through this injunction. And I think if you just look at that language, it would be one thing if this were a system that Congress intended to create where you'd have a situation where someone could file, for example, on day 150. But you're missing my point. My point is, are we ever going to get to 706? And that's why your brief didn't really help me either. Seems to me we're looking at 702. I'm trying to figure out, do these people have a legal wrong? I can't see they would. There's no right to employment. Then I'm saying, well, is it adversely affected or aggrieved? Well, how can they be aggrieved when they have no right to employment? So I'm saying to myself, how do we even get to judicial review under 702? So there is no statutory right to employment authorization. That is correct. And that's an important point that perhaps we should have emphasized more, and I apologize to the Court for not being as quick. Let me look again at 702. If I go to 208.7, which is the regulation that's involved here, there's no private right of action in 208.7? That's correct. And if there isn't, doesn't Alexander v. Sandoval say we need to look to the underlying statute to determine whether there's a private right of action? You do have to look to the statute. And that would mean we'd go right back to 1158.d.7, and there'd be no private right of action? That's correct. There's no private cause of action by statute. And so that's one of the places in which perhaps this matter got a little bit off kilter, and why we think it would be inappropriate for, and it was inappropriate for, the Court to enter an injunction, and particularly given the consequences of— Do you know a case that supports the idea that an express prohibition to a private right of action precludes APA review? I'm sorry, I didn't hear your question. I apologize. Do you know a case that tells me that the Congress's express prohibition of a private right of action would preclude review under the APA? So there are cases—the APA is a limited waiver of sovereign immunity. I know what it is. But I'm trying to figure out now, I've got this no private action in 208.7. I've got Alexander saying I have to look at the underlying statute. And now I look for a case which would say, if they have expressly prohibited the private right of action, do they get to go under the APA? And the answer is no, because the APA doesn't— You have a case. I do not, Your Honor. I can't think of a case off the top of my head. Is it possibly that way? Because in the context that we're talking about here, is it really even a private right of action? You're really talking about enforcing a regulation that the agency—well, I say under the APA. And you can have a citizen complaint to that effect, basically, even if they don't have a private claim, do you not? Well, I think it does require a private cause of action. Otherwise, there was no basis to—otherwise, our motion to dismiss should have been granted. So basically, you're saying that in that setting, there'd be no standing, basically. Right. I mean, we initially moved to dismiss on the ground that there was no standing. Any case claim that was moved, that was denied in the February 10, 2016 order. And the fact remains, there is no basis for allowing this class to assert this claim. So you're—based on this discussion, you're saying that Vietnam Veterans of America v. CIA is just flat-out wrong. Well, I'm not— Because that's what it does. You know. It barely does. And so is the Fourth Circuit case, and so is the Tenth Circuit case. How does that survive in light of what my colleague has pointed out in terms of 702 and 208? I think it is. 208.7. Right. It's the regulation. Right. We would just say, even in the absence of a regulation, a court could—well, I mean, I don't—I'm not sure what to say other than the statute says what it says. Congress made its intent clear. 1158D says what it says. It says that there's no—that there's—Congress did not intend to create any subjective or procedural right of benefit that's legally enforceable. And that's really the end of the matter. Right. But nobody's saying that Congress did create that here. The issue is that the agency drafted the regulation the way that it did. It didn't have to say 30 days. It could have said 50 days. It could have said no days or, you know, reasonable time or something else. And then this would be a very different case. But when you're faced with a regulation that's on its face, it seems pretty mandatory. Isn't the purpose of the APA to allow somebody to vindicate a right that the agency has decided to make available? Again, this gets to the question of whether or not the agency intended to create a right and whether or not it was even able to do so, given what Congress has already said. And there's problems with interpreting a regulation in a manner that puts it at cross-purposes with the statute, with the policy determination that Congress had already made. Can I ask you a slightly different question? I know you want to reserve your time. But you had argued below that this was moot. There's no suggestion of mootness, though, in your brief. Is the case moot? Well, that's because the district court certified a class. So that was the argument as to why it was not moot. And we're not – as I mentioned earlier, we're not challenging that. So with that, I'd like to reserve my remaining time. If I might, I'd like one more question because I'm interested in these issues, and that's a sign that you're probably going to get the same kind of questions. Why is this a final agency action? Well, there is this question of whether or not this was a discrete agency. Well, I mean, you didn't argue this too much, but I wanted you to think about it. 551.13 says when these are going to be. So is this a final agency action here? I recognize there's an argument that it was not a final agency action. But, you know, it's a little bit unclear, given what no action under some circumstances can be seen as, in fact, the definition of action. And it has to do with how action is defined in the definition section of the APA. Okay. Thank you. We'll give you a little extra time since we took some of your time. Very well. Pardon me, I'd just like to raise the podium. Good morning. Oops, wrong way. All right. May it please the court. Good morning. May it please the court. Christopher Strawn for Northwest Immigrant Rights Project and APALYS. I'd like to start by addressing Judge Smith's question regarding jurisdiction. So this issue that there's a statutory provision precluding judicial review here. Now, that was precisely what appellants argued before Judge Robart in the district court. And Judge Robart rejected. You asked for a case. But Judge Robart was interpreting the statute. And I'm looking at the statute. And given its de novo review on this, I'm saying why? Exactly. So Judge Robart appropriately cited the Supreme Court case Kukana, which is directly on point here. And that is that Kukana holds that when the statute contains this kind of jurisdiction stripping argument, using the same language applying to a subsection, that does not apply to regulations that are promulgated under the statute. Now, the question is the problem is when you look at the regulation, the regulation 208.7 doesn't give any private right of action. And when you look at Alexander v. Sandoval, it says if there's nothing that says there's any private right of action in the regulation, then you look back to the underlying statute and we're back to 1158.V.7. I think that Kukana is really on point here. And as well as the line of cases under the Accardi doctrine, that is when the agency creates a regulation that's more restrictive, that creates some kind of individual right, then an individual can sue under APA, under mandamus, to enforce that particular right. I'd note that also this issue of jurisdiction, the district court judge followed Kukana, and the appellants did not raise that issue in their brief. They did not pursue that argument. Because they didn't raise it doesn't mean I can't attack jurisdiction. I've got to. That's why I'm asking you the questions. Right. And we would argue that the Supreme Court has answered this and as appellees noted. Well, let me ask you a question. This was the question then. Has there ever been a case where a Congress's express prohibition to the private right of action ever precluded review under the APA? I'm not sure if I'm in a position to answer that, so I can't think of an example off the top of my head. But I certainly don't think that it's unusual that you have individual actions under the APA, under mandamus. Certainly we see them all the time in immigration cases challenging the agency's failure to act. We cite Dong v. Chertoff in the briefs, for example. And we see that not only in the immigration context, but in many of the environmental cases that we've been citing in these briefs as well. And we have hundreds of cases that do that. Yes, I really don't think that is a controversial point. Perhaps the other point that this Court was asking about that's worthwhile really addressing is the injunction. Now, as you know, the district court decided the injunction on two grounds. First, under Badgley, that is that the language and intent of the law was clear, so that it didn't need to do the track balancing factors. And then it also went ahead and applied the track balancing factors as well in the alternative. Of course, this Court under Columbia Pictures can rely on either of these rationales to uphold its decisions. Now, we would certainly argue the district court was correct in applying Ninth Circuit precedent in Badgley and Forest Guardians. That is, when the law is clear, when the intent is plain, there is no balancing to do. What is an unreasonable delay? The regulation has already answered that. Thirty days, once asylum applicants have already had to wait 150 days to be able to apply for work authorization. With the agency intent clear, also by its Federal Register promulgation, and the APA directing that the Court should compel agency action unlawfully withheld, this question is answered and the Court need not go into the track factors. As to separation of powers, which is really Appellant's argument here, I think that the separation of powers argument has equal force. And as the court, as the district court noted, there's really no reason to distinguish between the regulation and the statute. And that's because under Arizona Grocery, the Supreme Court has specified that when Congress specifically delegates to the agency the ability to act, and here they did, the agency may make the regulations related to employment authorization, then the agency speaks as the legislature and its pronouncements have the force of statute. Really, we're talking about a legislative rule. And I think the same big-picture separation of powers concept applies. That is, this Court enforces what the law is. When the law is clear, when the intent of the law is clear, as it is here, this 30-day deadline once asylum seekers have had to wait for their work authorization, the balancing has already been struck and the Court doesn't need to look any farther. That's true as to the 30 days, but there are a whole other host of questions that come up, particularly in a class action where you're trying to put in place an injunction. I mean, if the district court here had said the government needs to comply with this within 24 hours, I would think that nothing in Badgley or the regulation or anything else would say that the district court was somehow required to do that. That would be an exercise of discretion using the equitable factors that go into issuing an injunction. We wouldn't maybe call them the track factors because it doesn't seem to quite fit this case, but there's still some amount of equitable discretion that's involved that would then be reviewable, right? Yes, I think that is correct, that it really is case-by-case looking at the language and intent of the law. And Forrest, Guardians, and Badgley both engage in that analysis, I would say, in terms of ordering when action would happen. Let me step in a different direction just a little bit, just to maybe test this a little bit. In Ezell versus the United States, it's a Ninth Circuit case, 2015. There we had language which says, the Court of Appeals shall grant or deny the authorization to file a second or successive application not later than 30 days after the filing of the motion. So it said what we had to do. And we said, no, we don't have to do that. This is Congress saying, we have to do that. And we looked at the provision, and we held that the statutory prime period providing a directive to an agency or public official is not ordinarily mandatory unless it is both expressly, requires the agency or public official to act within a particular time period, and specifies a consequence for the failure to comply with the provision. So what we did is we said, well, you're not going to get us to do that. We're not going to have any mandamus filed against us. And so that's what we're going to do. So why is this not applicable in this case? So I think this speaks directly to the loss of authority arguments in cases that we were briefing. That is, some of the directions to act within a certain period of times can be a claims processing rule that can be relaxed. However, the Supreme Court distinguishes between the different types of loss of authority cases. So here, for example, we're not arguing for some extra-regulatory or extra-judicial sanction. That is, that the agency can't adjudicate the work authorizations if they're acting past 30 days or they're precluded from denying work authorizations when they take too long. Rather, we're simply directing, we're asking the court to direct that they follow the law. So, and I would note, in Brock and Dolan, the Supreme Court, I think, addressed this issue straight on. Well, I appreciate you got to Brock and Dolan because that's the next question. In Brock and Dolan, they talked about a deliberate failure of the sentencing court to comply with the statute. Seems improbable. Should that occur, the defendant can seek mandamus. So in those cases, they said, if it were deliberate, we would allow you to go to the APA or the mandamus. But since it isn't deliberate, we're not allowing you to go there. Why is this not such a case? Well, with due respect, I don't think that the Supreme Court was looking at whether it was deliberate or not. In those cases, that's the language. I got it right out of there. Certainly. Dolan says it's a deliberate. It's a 616. So make two points on that. First of all, here the agency has shown that it is able to comply with the regulation. So now we're at nearly 99 percent compliance. Dolan said in his record that they were deliberate in anything they did. Well, I'm not sure if I can completely agree with that, Judge, in that prior to this lawsuit being filed, the compliance rates were extremely low. Even after the district court judge in 2006 issued a ruling stating they have to follow the regulation, the compliance rates went up but were nowhere near the levels that they've been once the injunction issued. But if I can return to Brock and Dolan, I think the main point in these two cases, they both reference alternatively mandamus as a remedy and APA actions as a remedy in the context of petitioners or plaintiffs in those cases arguing that the agencies would or the court would lose its jurisdiction to take action if it didn't do so within a time period, if it didn't order restitution within X days. And what the Supreme Court was saying was that the remedy wasn't that the agency or the court lost its authority, but it lied in mandamus or APA to compel action within those time periods. So in that case, I think we really are square with those two Supreme Court decisions, which I'd note that appellants don't even address in their reply briefs. I know you briefly touched on this, but would you address Judge Smith's concern about a private right of action? You know, he cited the statute. He cited the regulation and indicated that there's no private right of action here. Well, he indicated it may be a little far that I went. I was asking it pretty direct because it seems to me somebody's got to answer, but I'm still asking the questions. I've got to make this decision. So we both are asking that question. I appreciate Judge Smith being glad to put me now in and not on a pedestal out in the left. Well, and, of course, I'm happy to do my best to answer the questions as well. I mean, I really feel like the long line of cases under the Accardi Doctrine address this. That is, when there is a regulation, then the agency can be compelled under the APA, or mandamus when there's a mandatory duty or a right that's created that benefits individuals. They can be compelled to follow that regulation. U.S. v. Nixon, Accardi v. Shaughnessy, Service v. Dulles. I mean, I think this is a well-established principle, not even just looking at the more common district court cases. But do those cases cite the statutes that my colleague has just referred to? I don't think they're addressing those specific statutes. So this is a more general concept that the agency is able to create regulations that are binding. His specific question, if I understand it correctly, he's saying, we ought not to even be considering this because these are private parties, and they're challenging an agency action, and the statute says there's no private right of action there. Why are we here? Well, this goes back to what I was trying to answer with the Kukana decision, which I think is the most on-point Supreme Court case, that the statutory provision is not implicated because the appellees are seeking enforcement of a regulation. It interacts with the Accardi doctrine because that recognizes the regulation can be different and stricter than the statute. So the enforcement of a regulation is different from the case law perspective than a private right of action, in quotes. I think that's right. The problem comes in that if I read Alexander v. Sandoval, if the regulation doesn't provide the private right of action, then at that point I have to look to the underlying statute to determine whether there is one or not. And if I look at the underlying statute, it says you don't have one. The underlying statute provision, we have to look carefully at the language, it says that enforcing this subsection is not permitted. It doesn't say this subsection or any other regulations promulgated thereunder. Again, that is really the issue that was in Kukana as well. So, for example, how does that play out? If this subsection also includes the requirement that the agency adjudicate all asylum applications within 180 days, this is the backdrop for this EAD regulation, right? Assuming that everybody should already have a decision on their asylum application. Courts on the district court level have held that I can't sue under mandamus to argue that the agency has to adjudicate my individual asylum case within that 180-day period. But that's distinct from any other regulations that might create some right. So in terms of the process of the trial, my hearing, et cetera, those rights can still be enforced. And those are enforceable through the APA. Exactly. That's your position. Now I do want to turn to the track factor analysis as well. And I think it's really important to highlight, as we heard in a prior case, the standard of review that this Court is using to review Judge Robart's detailed decision and weighing of the track factors in the alternative. So as this Court has noted, this is for abuse of discretion. We're looking at whether or not the district court's decision was illogical, impossible, or without support in the factual record. And here the district court took appellant's arguments as to resource constraints, the arguments they make today, and gave them full weight. Said even accepting those arguments on their face and assuming it weighs against an injunction, I'm going to weigh the other track factors and look at the purpose and language of the regulation as well as the health and welfare benefits. And on balance, I would find if I applied the track factors, that it weighs in favor of entering an injunction. Now here appellants aren't arguing that there was any factual error in the district court decision. They just wish that the district court had given their factor all of the weight and discounted the weight of the other factors. That's not abuse of discretion. That is not illogical, impossible, or without support. And I don't think they really suggest that in the briefs. Do you take issue with the government's rate of compliance at this point? You may have before, but where we are today, do you take issue with that? No, we do not. After appellants appealed to this court, the parties conferred. We came up with an implementation plan, and we went back to the district court under its authority to modify injunctions and ask them to resolve a couple issues and to make sure this implementation plan would help the agency comply with the regulation. And at this point, we haven't gone back and argued that they're not in substantial compliance with the regulations as their numbers reach near 99 percent of adjudicating these work authorizations within 30 days. Is this case moot then? Have you resolved your issues? They're going to change the regulation so the 30-day factor won't apply anymore once they finish notice and comment. The district court has modified the injunction to take into account the compliance rate. What are we talking about here? If the appellants agree to continue with this implementation, I agree this matter is effectively resolved. It is not moot, though, because we still have individuals who are benefiting from it. Of course, the appellants have noted they have no idea if and when the regulation is going to come into effect. When it does, they can go back to the district court, and as the district court did before, they can ask that the injunction be modified. We expect even if the regulation changes, it's only so as to be prospective. It's not going to apply retroactively according to the proposed regulation. So we still have this class. We would just have a diminishing number of people who would benefit over time. If the government agreed and you all stipulated, if you just let it be and don't have any opinion from us, if you were happy and they were happy, would that work? So if they agreed to continue to follow the implementation plan and we could leave it with the district court to modify the injunction as appropriate, if the law changed, then I think that appellees would have no issue with that. And we did not file an appeal in this case of the district court judge's decision. Now, I would just say on this resource-constrained argument, not only did they have a full and fair opportunity to bring this up, bring all of these arguments up in district court, we had oral argument, we had cross motions on the issue. We also actually disputed that there was a resource allocation issue, that is that the agency is able to comply with these kinds of deadlines when it has to. We cited a number of different cases to that effect. It has legal tools to address cases where there is going to be a delay, where it has a concern about an individual. The regulation at 8 CFR 103.2 allows them to stop that 30-day clock and ask for more information if they need it. They need more records, more information. They don't run afoul of the regulation. Also, we've been posting these compliance reports under the implementation plan. Every month, a compliance report comes out. At our response brief on page 2, we give you the link to look at the most recent ones. The number of these asylum applications, these work authorization applications, has actually been dropping this year. So we are at about 20% less than the year before. So to the extent that the agency is now making any new arguments  or it's causing some resource allocation issue, we think not only did the district court address that, but any new facts need to be brought back to the district court to argue to modify the injunction if there is some issue with compliance now, rather than raising that in the first instance with the court of appeals. Really, this is a case where the district court did not tell the agency how to allocate its resources. It was not micromanaging how the agency would be adjudicating these individual applications. It was merely directing the agency to follow the clear mandate of the regulation, and it was a regulation that USCIS created. For that reason, we argue there was no error in the district court finding this regulation created a mandatory duty. Shall, must is the language that we used. And in light of the fact that the agency was not complying with the regulation even after its initial decision in 2016, providing injunctive relief directing the agency to follow its own regulation. Thank you. Thank you very much, counsel. So you're out of time. We'll give you a couple of minutes, counsel, to argue. Thank you, Your Honor. I'm going to be brief. Could I just ask you something following up on what is said here? The government obviously is the appellant here. Correct. You have a situation where the government is almost in full compliance with the regulation. You're going to change the regulation in any event. You run the prospect, if we continue with this, of having a written opinion that decides these issues entirely against you. I'm not saying that's what's going to happen. I'm just saying arguendo. That could happen. Do you want to continue with this? Do you want to settle it, leave it to the district court to micromanage anything if it needs to be done? Do you want us to proceed with the appeal as you have made it? So obviously I would have to talk to the agency. Oh, of course. But, you know, this might be an appropriate situation where some type of mediation might be appropriate. I'd like to talk to the agency, but I thank you for sharing those thoughts. I'd just like to make one brief point. Please do. All I would say on this is please let us know as soon as possible because we work quickly. Yes, Your Honor. I'd just say that 1158D7 says, nothing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person. We now have a situation where if someone applies for employment authorization on day 150, the first day that they can, and that by day 180 in the morning, the agency would gain the authority to adjudicate that employment application, and by that evening they would be required to do so. That is, if they adjudicate it on day 179, it's too early. If it's day 181, it's too late. That would be one thing if this was the scheme that Congress envisioned, but it did not. That's why we're here, and I thank you for your time. Thank you. Any other questions by my colleague? Thanks to all counsel for your helpful arguments. We appreciate it. And we'll look forward to, unless we hear from you fairly promptly, we'll assume the answer is no and we'll proceed. Thank you, Your Honor. Okay, thank you very much. The case just argued is submitted, and we will now hear argument.
judges: M. Smith, Jr., N.R. Smith, Bress